# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS A. HILL et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 14-cv-6236 |
| | ) |
| CAPITAL ONE BANK (USA), N.A., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Capital One Bank (USA), N.A.'s motion to dismiss (R.16) and motion to transfer venue (R.24). For the following reasons, the Court grants Defendant's motion to dismiss in its entirety and dismisses without prejudice to refile where the court has personal jurisdiction.

## BACKGROUND

Plaintiffs Thomas A. Hill ("Hill") and Maya P. Parekh ("Parekh") (collectively, "Plaintiffs") filed a complaint alleging four counts against Defendant Capital One Bank (USA), N.A. ("Capital One"). Specifically, Plaintiffs allege conversion (R.9, Amend. Compl., ¶¶ 73-80, Count I), breach of contract (R.9, ¶¶ 81-97, Count II), negligence (R.9, ¶¶ 98-104, Count III), and negligent infliction of emotional distress (R.9, ¶¶ 105-136, Count IV).

Defendant Capital One moved to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue. (*See* Fed. R. Civ. P. 12(b)(2); Fed. R. Civ. P. 12(b)(3); R.16, Def.'s Motion to Dismiss.)

**I.       The Parties' Relationship**

Capital One is a national banking association with its principal place of business in McLean, Virginia. (R.9, ¶ 1; R.17-1, Rummel Decl., ¶ 3.)[1] Capital One has branch locations throughout the United States. (R.9, ¶ 1.) Capital One does not operate any bank branches in Illinois. (R.17-1, Rummel Decl., ¶ 3.) Capital One operates bank branches in only the following states: Connecticut, Delaware, Louisiana, Maryland, New Jersey, New York, Texas, Virginia, and Washington, D.C. (*Id.*) Capital One is a wholly-owned subsidiary of Capital One Financial Corporation, a Delaware corporation headquartered in McLean, Virginia. (*Id.*) In 2009, Capital One Financial Corporation acquired Chevy Chase Bank, a locally-based banking company in the Washington, D.C. metropolitan area, and in 2010, rebranded it as Capital One Bank. (R.17-1, Rummel Declaration, ¶ 5.)

Plaintiff Hill and Plaintiff Parekh are both licensed attorneys, and currently residents and citizens of the State of Illinois. (R.9, ¶ 2.) In 2007, Plaintiffs resided in Silver Spring, Maryland and in late 2010 they relocated to Illinois. (R.9, ¶ 20; R.21, attached to Pltfs' Response as Ex. A, Hill Declaration, ¶ 1).

**II.      The Safe Deposit Box**

In 2007, Plaintiffs, then residing in Silver Spring, Maryland, opened a checking account (the "Account") at a Maryland branch of Chevy Chase Bank—n/k/a/ Capital One—(the "Branch"). (R.9, ¶ 20.) Plaintiffs made regular monthly debits and credits into the Account and at no time was the Account dormant. (R.9, ¶¶ 25, 26, 85.) Plaintiffs requested a change in the

---

[1] The facts presented in the Background are taken from the complaint and are presumed true for the purpose of resolving the pending motion. *See Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002). The Court also considers the declarations outside of the pleadings submitted by both parties (*see e.g.,* Capital One's Declarations (R.17-1, Rummel Decl.; R.22-1, Wilson Decl.) and Plaintiffs' Declaration (R. 21, Ex. A, Hill Decl.)). *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Account number for security purposes and the Bank changed only the Account number, keeping everything else about the Account and its terms the same (the "New Account Number"). (R.9, ¶¶ 24, 27, 28.)

Upon opening the Account, Plaintiffs simultaneously leased a safe deposit box (the "Box"), governed by a Safe Deposit Box Agreement ("Box Contract") made between Plaintiffs and Capital One. (R.9, ¶¶ 21, 82; *see also* R.9, ¶¶ 83-97.) The Box was located at the Branch and Plaintiffs authorized the Branch to deduct a Box maintenance fee from the Account. (R.9, ¶¶ 22-23.)

The Box contained Plaintiffs' personal items typical of those commonly known to be items that are most secure stored in safe deposit boxes, including birth certificates, a necklace and earring set ("Jewelry"), and an original Last Will and Testament. (R.9, ¶¶ 42, 44, 54.) Plaintiff Parekh's parents purchased the custom designed jewelry for Plaintiffs in India. (R.9, ¶ 45.) In honor of the custom in Indian weddings that the bride's family bestows gifts of exquisite jewelry upon the bride and groom, Plaintiff Parekh's parents traveled to India from the United States in 2005 for the sole purpose of designing and bringing back the Jewelry, along with other wedding-related items, in anticipation of Plaintiffs' marriage nine years ago. (R.9, ¶ 48.) The Jewelry was made of 24 karat gold and the finest quality pearls and diamonds with each component hand-selected and each aspect custom designed, including the tone of the gold, the specific pearls and diamonds used, and the curvature of the necklace and earrings. (R.9, ¶¶ 46, 47, 51.) Plaintiff Parekh's parents presented the Jewelry to Plaintiffs on their wedding day. (R.9, ¶ 50.) The Box also contained the Last Will and Testament of Plaintiff Parekh's uncle who lives in Rio de Janiero, Brazil—Plaintiff Parekh is the executrix of his estate. (R.9, ¶¶ 54-55.)

**III.     The Dispute**

The monthly maintenance fees for the Box went unpaid for a period of time.  (R.9, ¶ 31.) Plaintiffs allege that unbeknownst to them, Capital One neglected to link the Box and the automatic maintenance fees to the New Account Number.  (R.9, ¶ 29.)  Plaintiffs further allege that Capital One did not advise Plaintiffs of this error and did not request monthly maintenance payments from Plaintiffs by any other means.  (R.9, ¶¶ 32-33.)

On or about November 4, 2011, the Branch manager drilled into the Box to obtain its contents due to nonpayment of the Box maintenance fee.  (R.9, ¶ 34.)  Plaintiffs did not receive notice that the Box would be drilled into.  (R.9, ¶ 34.)  When Plaintiffs attempted to recover the contents of the Box, the Branch representative was unable to locate the contents in the usual storage facility where such items are generally maintained.  (R.9, ¶ 35.)  Approximately one month later, Plaintiff Hill was advised in an email from a Relationship Banker at Capital One, D. Neela S. Finlay, to seek the contents of the Box at the Maryland Division of Unclaimed Property.  (R.9, ¶¶ 36-37.)  The Maryland Division of Unclaimed Property, in turn, advised Plaintiffs that Capital One had not delivered Plaintiffs' property there.  (R.9, ¶ 38.)  Plaintiff Hill asked to speak with the Branch manager who drilled into the Box and was advised by Capital One that it had terminated that employee.  (R.9, ¶ 40.)

Plaintiffs threatened litigation in June 2014 by sending a letter to Capital One headquarters and an investigation was conducted by a Bank representative, Ms. Cheryl Jones. (R.9, ¶ 62.)  A Capital One Bank Drilling and Contents Affidavit ("Drilling Affidavit") indicates that "Box # 323" was drilled into on November 4, 2011 at the Corridor Marketplace Branch and the associated "Title of Account" is Thomas Hill.  (R.9, ¶ 66, Drilling Affidavit, attached as Ex.

B to Amend. Compl.) The Drilling Affidavit further indicates that the Box contained: 1 empty red jewelry box, 8 gold tone earrings, 4 gold tone necklaces, 1 birth certificate, and 2 power of attorneys. (R.9, ¶ 66, Ex. B.) Ms. Jones sent Plaintiffs a purported receipt and report as evidence that the Box was turned over to the Maryland Unclaimed Property Division. (R.9, ¶ 63; R.9, Receipt for Content of Safe Deposit Box from Comptroller of Maryland, attached as Ex. A to the Amend. Compl.) While the receipt makes no reference to the Box, the report indicates that Box Number 323 from the Corridor Marketplace Branch is associated with the Customer Name, Thomas A Hill and further lists a "Bill Due Date" of "1/7/2001" and an "Address, City, State" of "1133 Fortuna Ave, Park Ridge, IL." (R.9, ¶¶ 64-65, Report accompanying the Receipt for Content of Safe Deposit Box from Comptroller of Maryland, attached as Ex. A to the Amend. Compl.) To date, no one at the Branch has been able to assist Plaintiffs in locating the contents of the Box. (R.9, ¶ 39.)

Plaintiffs allege that Capital One improperly failed to link the Box to their New Account Number, failed to timely notify Plaintiffs of the situation, failed to conduct basic due diligence to uncover an active account owned by Plaintiffs at the Bank, and improperly liquidated the Box. (R.9, ¶ 71.) Plaintiffs further allege that while the birth certificates are replaceable, the Jewelry has both tangible value—based on the weight of 24 karat gold used, the weight of the individual pieces, and the pearls and diamonds—and intangible value—based on the fact that Plaintiff Parekh's parents designed the Jewelry for Plaintiffs, travelled to another country to obtain it, and presented it to Plaintiffs on their wedding day. (R.9, ¶¶ 52, 53, 115, 116.) Plaintiff Parekh's uncle lives in Rio de Janiero, Brazil, and it will be difficult for Plaintiff Parekh to execute another original Last Will and Testament, unless her uncle makes a special trip to the United States for that purpose. (R.9, ¶¶ 56, 57, 119-121.) Plaintiffs filed the instant litigation against

Capital One on September 9, 2014 alleging conversion, breach of contract, negligence and negligent infliction of emotional distress. (*See generally*, R.9.)

## LEGAL STANDARD

### I. Rule 12(b)(2) – Lack of Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Central States v. Phencorp. Reins. Co.*, 440 F.3d 870, 875 (7th Cir. 2006). In ruling on a Rule 12(b)(2) motion, courts may accept all well-pleaded factual allegations in the complaint as true unless controverted by affidavits outside the pleadings, which may also be considered. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir. 2012) (explaining that courts may consider affidavits from both parties). When a court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, as is the case here, the plaintiff must make a *prima facie* case of personal jurisdiction. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-34 (7th Cir. 2010); *GCIU-Emp'r Ret. Fund v. Goldfarb Corp*., 565 F.3d 1018, 1023 (7th Cir. 2009). As such, the plaintiff bears the burden of establishing that personal jurisdiction exists. *See uBID*, 623 F.3d at 423-34; *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1023. When the defendant challenges by declaration a fact alleged in the plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found.,* 338 F.3d at 783. Courts must also resolve all factual disputes in the plaintiff's favor. *See GCIU-Emp'r Ret. Fund*, 565 F.3d at 1020, n.1. Unrefuted facts in the defendant's affidavits, however, will be taken as true. *Id.*

While in this context affidavits trump the pleadings, in the end courts resolve all facts disputed in the affidavits in the plaintiff's favor. *Purdue Research Found.,* 338 F.3d at 782.

**II.      Rule 12(b)(3) – Improper Venue**

In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), all allegations are taken as true, unless contradicted by the defendant's affidavits and the court may consider facts outside the pleadings. *See Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 806 (7th Cir. 2011). Courts must resolve any conflicts in the affidavits regarding relevant facts in the plaintiff's favor. *See Purdue Research Found.*, 338 F.3d at 782. The Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783; *see also Faulkenberg,* 637 F.3d at 806 (noting that the same standards apply to improper venue as do a Rule 12(b)(2) dismissal). *Id.*

**ANALYSIS**

Plaintiffs have alleged conversion, breach of contract, negligence and negligent infliction of emotional distress against Capital One. (*See generally*, R.9.) Even when construing the facts in the light most favorable to Plaintiffs, *see Purdue Research Found.,* 338 F.3d at 782, however, Plaintiffs have not met their burden in establishing a prima facie case that the Court has personal jurisdiction over Capital One.

As an initial matter, the Court notes that both Plaintiff Hill and Plaintiff Parekh are *pro se* in this proceeding and that under normal circumstances the Court must hold a *pro se* complaint to a less stringent standard than formal pleadings drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001);

*Wilson v. Clayton, Ind.,* 839 F.2d 375, 378 (7th Cir. 1988). Both Plaintiff Hill and Plaintiff Parekh, however, are attorneys and therefore have legal knowledge that the typical *pro se* plaintiff without assistance of counsel would not otherwise have. (R.19, Joint Initial Status Report, at 1 ("Plaintiffs are each attorneys appearing *pro se*").) As such, Plaintiffs Hill and Parekh are not entitled to special treatment and the Court will not liberally construe their allegations as it would a *pro se* litigant's filings. *See Cole v. C.I.R.*, 637 F.3d 767, 773 (7th Cir. 2011) (citing *Lockhart v. Sullivan,* 925 F.2d 214, 216 n. 1 (7th Cir. 1991)) ("We note that *pro se* litigants who are attorneys are not entitled to the flexible treatment granted other *pro se* litigants.")

## I.     Personal Jurisdiction - Minimum Contacts with Illinois

When, as here, the Court's subject matter jurisdiction is based on diversity of citizenship, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). A court's exercise of jurisdiction over a defendant must be authorized by the terms of the forum state's personal jurisdiction statue and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause. *Felland*, 682 F.3d at 672 (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)); *see also uBID*, 623 F.3d at 425; *Northern Grain Mktg., LLC v. Greving,* 743 F.3d 487, 492 (7th Cir. 2014). The Illinois long-arm statute permits a court to exercise personal jurisdiction "on any … basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because the Seventh Circuit has held that "there is no operative difference between those two constitutional limits," the Court will "proceed to the question of whether the exercise of personal jurisdiction would violate federal

due process." *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citations omitted); *Russell v. SNFA*, 987 N.E.2d 778, 785-86 (Ill. 2013).

For a court to exercise personal jurisdiction over an out-of-state defendant, the key issue for constitutional purposes is whether the defendant has sufficient "minimum contacts" with the forum state such that "the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Mobile Anesthesiologists Chicago*, 623 F.3d at 443; *see also Tamburo*, 601 F.3d at 701 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Personal jurisdiction may be either general or specific. *See Advanced Tactical Ordnance Sys., LLC v. Real Action*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler AG v. Bauman*, ___ U.S. ___, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014)).

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG*, 134 S.Ct. at 754 (quoting *Goodyear,* ____ U.S. ____, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)); *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. at 408, 414, n.9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Advanced Tactical*, 751 F.3d at 800. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l Corp.*, 302 F.3d at 713.

Capital One argues that general jurisdiction cannot exist over it because it is not "at home" in Illinois. (*See* R.17, Def.'s Mem. in Supp., at 6 (citing *Daimler AG*, 134 S.Ct. at 749).) Plaintiffs respond that Capital One's contacts consisting of a brick and mortar facility in Illinois with banking functionality and critical business functions performed in at least four locations in Illinois constitute a significant presence that confers personal jurisdiction. (*See* R.21, Pltfs' Response, at 6-12.) In support of their arguments, Plaintiffs refer to extrinsic evidence—outside of the pleadings—attached to their Opposition. (*See* R.21, Exs. B-H.) Plaintiffs rely on these exhibits to refute Capital One's contradictory allegations challenging personal jurisdiction, however, Plaintiffs have failed to establish these exhibits as competent proof upon which the Court can rely. *See Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 541-42 (7th Cir. 2006) (explaining that when jurisdictional allegations are controverted, the party asserting federal jurisdiction must support those allegations with competent proof).

Specifically, Plaintiffs submit Exhibit A, a signed declaration of Plaintiff Hill. (R.21, Ex. A.) Plaintiffs also submit Exhibits B-H which include: (1) computer screen shots of ATM bank locations and various website printouts of a Capital One 360 Café address in Chicago (*id.*, Exs. B-E); (2) job descriptions in Illinois affiliated with "Capital One" from the www.capitalone.com website (*id.*, Exs. F & G); and (3) a website version of an article from chicagobusiness.com entitled "Capital One signs big Rolling Meadows lease" (*id.*, Ex. H).[2] Plaintiffs, however, have not submitted an affidavit or declaration attesting to the authenticity of these exhibits or the details as to when, where, and how such images were obtained. Plaintiffs ask the Court, presumably in lieu of filing an affidavit or declaration, to take judicial notice of these exhibits. A

---

[2] Indeed, many of the website printouts and screenshots have incomplete or cut-off website addresses (*see e.g.,* R.21, Exs. B, C. D, E, H) and the job descriptions contain no identifying information as to where, when or how they were obtained (*see* R.21, Exs. F, G).

court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). While courts in this District have taken judicial notice of website printouts that originate from government or agency websites, they have rejected requests for judicial notice of website printouts where the party has failed to "explain why [the website] materials are the appropriate subjects of judicial notice, *i.e.*, that they are matters of public record, or generally know, or come from sources whose accuracy cannot reasonably be questioned." *See Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, No. 12-cv-01851, 2013 WL 80369, at *4 (N.D. Ill. Jan 7, 2013); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (noting that contents of government websites are a proper item of which to take judicial notice); *Hensen v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir.1994) (a district court may take judicial notice of public court documents in deciding a motion to dismiss); *Felty v. Driver Solutions, LLC*, No. 13 C 2818, 2013 WL 5835712, at *3 (N.D. Ill. Oct. 30, 2013) (rejecting request for judicial notice of website materials since the case did not "involve[] governmental websites and issues of agency"); *see also CYBERsitter, LLC v. People's Republic of China*, 805 F.Supp.2d 958, 963-64 (C.D. Cal 2011) (rejecting plaintiff's request for judicial notice of facts appearing in "statements or images appearing on undated, unverified websites without an accompanying declaration as to when, where, and how such images or statements were obtained").

Without an affidavit or declaration providing the requisite indicia of reliability pursuant to Fed. R. Evid. 201(b)(1) and 201(b)(2), the Court cannot accurately and readily determine the

accuracy of the exhibits in order to take judicial notice of them. Furthermore, because the internet contains a wide variety of information with varying levels of reliability, the Court is not required or inclined to take judicial notice of Plaintiffs exhibits based only upon the evidence before it. *See Mussat v. Power Liens, LLC*, No. 13-cv-7853, 2014 WL 3610991, at * 3 (N.D. Ill. July 21, 2014) (refusing to take judicial notice of the defendant's website in order to show the existence of a business relationship that lacked the requisite indicia of reliability pursuant to Fed. R. Evid. 201(b)(1), (2)); *see also Felty v*, 2013 WL 5835712, at *3 (refusing to take judicial notice of websites that were not government or agency websites "due to the evolving nature of websites"). As such, the Court does not consider Exhibits B-H in ruling on Capital One's Motion to Dismiss.

Even if the Court considered the website printouts and screenshots, however, these allegations of contacts with Illinois do not subject Defendant Capital One to general jurisdiction in Illinois. Capital One is a national banking association headquartered in Virginia and a wholly-owned subsidiary of Capital One Financial Corporation, a Delaware corporation, also headquartered in Virginia. (*See* R.9, ¶ 1; R.17-1, ¶ 3.) Capital One operates bank branches only in Connecticut, Delaware, Louisiana, Maryland, New Jersey, New York, Texas, Virginia and Washington D.C. (R.17-1, ¶ 3.) The Supreme Court's recent *Daimler* decision is instructive here. *See Daimler AG*, 134 S.Ct. 746. In *Daimler*, the Supreme Court held that, with respect to a corporation, affiliations supporting general jurisdiction are typically limited to the corporation's place of incorporation and principal place of business. *Daimler AG*, 134 S.Ct. at 760 ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'"). The Supreme Court further noted that the general jurisdiction analysis should focus on a corporation's true locus of corporate activity,

which "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 134 S.Ct. at 762.

Plaintiffs' additional reliance on the Capital One 360 Café in Chicago and job postings from the www.capitalone.com website for various locations in Illinois does not provide additional presence in Illinois such that an exercise of general jurisdiction over Capital One is warranted. First, Plaintiffs rely on the website image for a Capital One 360 Café located in Chicago (the "360 Café') as evidence of a Capital One bank branch, similar to the Branch in Maryland where they originally rented the Box. (R.21, at 6; Exs. B, C.) The map showing the 360 Café's location in Chicago in Exhibit B references "Bank ATM Locations" and identifies the 360 Café, further describing it as "accepts deposits for Capital One Bank Accounts." (R.21, Ex. B.) The website image in Exhibit C does not describe the 360 Café as a bank branch, but rather describes it as a "café" for patrons to get "a great cup of coffee, to socialize with friends or surf the web on their way to work." (R.21, Ex. C.) In refuting Plaintiffs' allegation, Capital One submitted a declaration from Antonio Wilson, the Café Manager of the 360 Café who attests that this is the only Capital One Café in Illinois and that is contains only one Capital One ATM that accepts deposits. (R.22-1, ¶¶ 3-4.) Mr. Wilson further attests that the 360 Café is not a bank branch, as it does not provide various services that one could find at a brick and mortar bank branch, e.g., renting safe deposit boxes, applying for mortgage loans, cashing checks, making traditional withdrawals, obtaining Cashier's Checks, purchasing checks, obtaining a replacement debit card, obtaining a new sign-in or debit card PIN, or obtaining printouts of account statements, transfer confirmation, or tax forms. (R.22-1, ¶¶ 5, 8.) The 360 Café, rather than providing a bank branch, provides a liaison between customers and Capital One's online website

13

to help assist with high level questions about account maintenance functions that can be performed online. (R.22-1, ¶ 6.) When the 360 Café patron's request goes beyond what can be done online or when the patron needs account servicing assistance, then the 360 Café patron is directed to call Capital One's customer service center. (R.22-1, ¶ 7.) Capital One further relies on a classification of a facility like the 360 Café by the Office of the U.S. Department of the Treasury, Comptroller of the Currency's ("OCC") Branches and Relocations Licensing Manual, a government website—which as addressed above the Court can take judicial notice of and does so here. (R.22, Def's Reply, at 6, referencing www.occ.gov/publications/publications-by-type.licensing-manuals/branches.pdf ("OCC Branches and Relocations Manual").) The OCC Branches and Relocations Manual specifies that the "following types of facilities are not considered branches", including "a facility that is not physically accessible to the public to make deposits, receive withdrawals, or borrow money" and "an automated teller machine (ATM)" (OCC Branches and Relocations Manual, at 2.)

Plaintiffs' reliance on a single website page indicating the location and address of the 360 Café and describing its account deposit-accepting abilities, does not create a dispute about the facts alleged by Capital One and, therefore, even when taken in the light most favorable to Plaintiffs, the 360 Café does not qualify as a bank branch of Capital One, such that the exercise of general jurisdiction over Capital One is appropriate based on the evidence before the Court. This is especially true in light of the fact that general jurisdiction—all-purpose jurisdiction— must look at whether these contacts with Illinois are "so 'continuous and systematic' as to render [Capital One] essentially at home in [Illinois]." *See Daimler AG*, 134 S.Ct. at 761 (citing *Goodyear*, 131 S.Ct. at 2581); *see also Gucci America, Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2014) (applying *Daimler AG*, and holding that general jurisdiction did not exist over a bank

with branch offices in the New York forum, but incorporated and headquartered outside of New York, and explaining that the "small portion of [the bank's] business … conducted in [the bank's branch offices in the New York forum] … plainly do[es] not approach the required level of contact").

In addition, Plaintiffs rely on various website printouts from www.capitalone.com referencing job opportunities in various locations, including Rolling Meadows, Illinois and a website printout from www.chicagobusiness.com referencing a "Capital One" building lease in Rolling Meadows as further evidence of Capital One's presence in Illinois. The website images that Plaintiffs submit, however, contradict Plaintiffs' allegations that this facility is a contact with Illinois for the Defendant, Capital One Bank (USA), N.A. Indeed, the article addressing the lease of the Rolling Meadows, Illinois facility by "Capital One" explicitly references "Credit card company *Capital One Financial Corp.* has leased 150,000 square feet in the Atrium Corporate Center in Rolling Meadows." (R.21, Ex. H (emphasis added).) The Defendant in this case is a "wholly-owned subsidiary of Capital One Financial Corporation." (R.23, Def.'s Rule 7.1 Disclosure Statement.) Courts ordinarily respect separate corporate identities when determining personal jurisdiction. *See Purdue Research Found.,* 338 F.3d at 788, n. 17; *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336, 45 S.Ct. 250, 69 L.Ed. 634 (1925). This separate treatment means that even if the Rolling Meadows lease from Capital One Financial Corp. was enough to confer jurisdiction over it as a *parent* corporation to Capital One Bank (USA), N.A. (a finding presumed solely for the sake of argument and not made by this Court here), that jurisdiction over Capital One Financial Corp. would not automatically establish jurisdiction over its wholly owned subsidiary,[3] without additional proof which Plaintiffs have not

---

[3] The additional "Capital One" job listings from the www.capitalone.com website in Mettawa, Volo, Chicago, and Downers Grove, Illinois similarly fail to establish a jurisdictional continuous and

provided here. *See Keeton v .Hustler Magazine, Inc.*, 465 U.S. 770, 781, n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Purdue Research Found.,* 338 F.3d at 788, n. 17.

B.     **Specific Jurisdiction**

The exercise of specific jurisdiction over a defendant requires a plaintiff to show that the alleged controversy between the parties "arises out of the forum-related activity." *Advanced Tactical,* 751 F.3d at 800. The Seventh Circuit recently provided guidance on the requirements for specific jurisdiction, stating:

> Nearly 70 years ago, the Supreme Court held that due process is satisfied for this purpose so long as the defendant had "certain minimum contacts" with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *Walden* serves as a reminder that the inquiry has not changed over the years, and that it applies to intentional tort cases as well as other. *See* [*Walden v. Fiore,* ___ U.S. ___, 134 S.Ct. 1115, 1119, 188 L.Ed.2d 12 (2014)].
>
> The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. *Id.* (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Crucially, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Id.* at 1121 (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum…." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement. *Id.*; *see Walden*, 134 S.Ct. at 1122.

---

systematic contact for Defendant. such that they would be considered "at home" in Illinois, as Plaintiffs have provided no evidence that these positions are related to Capital One Bank (USA), N.A. and not to Capital One Financial Corp. or another Capital One affiliated company. *See Daimler AG,* 134 S.Ct. at 754 (quoting *Goodyear,* 131 S.Ct. at 2851, The blanket acceptance of any reference to "Capital One" as applicable to Defendant's contacts in this case is not sufficient to establish a *prima facie* case for personal jurisdiction.

*Advanced Tactical*, 751 F.3d at 800-01; *see also Tamburo*, 601 F.3d at 702; *Purdue Research Found.*, 338 F.3d at 780-81. Consistent with these principles, courts apply a three-part analysis in determining whether specific jurisdiction exists:

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state;
> (2) the alleged injury must have arisen from the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*See Gilman Opco LLC v. Lanman Oil Co., Inc.*, 2014WL1284499, at *4 (citing *Felland,* 682 F.3d at 673 (citations omitted); *see also Northern Grain Mktg.,* 743 F.3d at 492 (quoting *Tamburo,* 601 F.3d at 702)).

Plaintiffs have not met their burden of showing that the alleged controversy between the parties "arises out of the forum-related activity." *Advanced Tactical,* 751 F.3d at 800. The facts viewed in the light most favorable to Plaintiffs establish that Plaintiffs' allegations arise from the Box Contract executed in *Maryland* by and between Plaintiffs, who were living in *Maryland* at that time, and a Capital One bank branch located in *Maryland*. (R.21, at 1; R.17, at 1.) Plaintiffs' claims of conversion, breach of contract, negligence and negligent infliction of emotional distress stem from the allegations that Capital One breached the Box Contract by drilling into the Box, which was physically located in *Maryland*, and advising Plaintiffs that the contents were turned over to the Unclaimed Property Unit of the Office of Comptroller for the state of *Maryland*. These facts demonstrate that the contacts between Plaintiffs and Capital One giving rise to this dispute did not stem from any forum-related activity.

Plaintiffs argue, without citing to any case law, that specific jurisdiction exists because the "primary omission giving rise to this action is the failure of Capital One *to give the plaintiffs*

17

*notice* with respect to perceived problems with the Box, a notification that should have been provided in Illinois." (R.21, at 13-14.) This alleged omission, however, is nothing more than an isolated act that does not constitute a minimum jurisdictional contact with Illinois that would reasonably cause Capital One "to anticipate being haled into the Illinois courts." *Allied Van Lines, Inc. v. Edwards Movers, Inc.,* No. 08 C 3186, 2009 WL 1579520, at *1-4 (N.D. Ill. June 3, 2009) (dismissing action for lack of specific jurisdiction because single facsimile transmission from defendant to Illinois does not demonstrate that the defendant purposefully sought to avail itself of the privilege of conducting business in Illinois). Furthermore, the fact that this single omission was felt in Illinois is even less persuasive as a jurisdictional contact for Capital One when the facts as alleged clearly show that it is Plaintiffs who unilaterally moved to Illinois after living in *Maryland* and while living in *Maryland* entered into the Box Contract with Capital One. *See Purdue Research Found.,* 338 F.3d at 780 (citing *Burger King,* 471 U.S. at 474; *World–Wide Volkswagen,* 444 U.S. at 298) ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity); *see also Walden v. Fiore*, 134 S.Ct. at 1123; *Gilman Opcp LLC*, 2014 WL 1284499, at *5. Rather, it is Capital One's "*suit-related* conduct that must create a *substantial* connection with [Illinois]." *See Advanced Tactical*, 751 F.3d at 800-01 (citations omitted). Indeed, the "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.*

Accordingly, Plaintiffs have not established a prima facie case that Capital One's jurisdictional contacts related to Illinois are sufficient such that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Gilman Opco LLC v. Lanman Oil Co., Inc.*, 2014WL1284499, at *4 (citing *Felland,* 682 F.3d at 673 (citations

omitted); *see also Northern Grain Mktg.,* 743 F.3d at 492 (quoting *Tamburo,* 601 F.3d at 702)).

For these reasons, the Court grants Capital One's Motion to Dismiss for lack of personal jurisdiction.

## II.     Improper Venue

Capital One also moved for dismissal of this case in its entirety under Rule 12(b)(2) alleging that the Northern District of Illinois is not a proper venue. (R.17, at 12-13.) The Court agrees. Plaintiffs allege that venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2). (R.9, at ¶ 4; R.21, at 14-15.) These provisions, however, require that Capital One reside in Illinois and is subject to personal jurisdiction in Illinois. *See* 28 U.S.C. § 1391(b)(1) (venue is proper in "a judicial district in which any defendant resides"); 28 U.S.C. § 1391(c)(2) (a business entity is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). As addressed above, however, the Court has found that Capital One is not subject to personal jurisdiction—either general or specific—in this proceeding and for these reasons, venue is also improper. The Court, therefore, grants Capital One's Motion to Dismiss for improper venue.

## CONCLUSION

For the reasons stated above, the Court grants Capital One's Motion to Dismiss for lack of personal jurisdiction and improper venue (R.16) and dismisses without prejudice to refile where the court has personal jurisdiction. Because the Court has granted Capital One's Motion to Dismiss in its entirety, no pending claims remain and the Court denies without prejudice Capital One's Motion to Transfer Venue (R.24) as moot.

**DATED: February 3, 2015**  ENTERED

_____
AMY J. ST. EVE
United States District Court Judge